## Ready-to-Wear Manufacturers' Association Charter.

*Corporations—Distinction between first and second classes—Application for charter.*

A corporation whose members are to consist of other corporations, firms and individuals engaged in a specified line of business, and whose principal purposes, as disclosed by evidence taken before the master on an application for charter as a corporation of the first class, are (1) the maintenance of a central showroom of merchandise manufactured or offered for sale by the members of the proposed corporation, (2) the engaging in co-operative buying for the members of the corporation and (3) maintaining a joint credit bureau, is essentially a business organization and may not be incorporated as a corporation of the first class under paragraph 11 of section 2 of the General Corporation Act of April 29, 1874, P. L. 73, which empowers the granting of charters as corporations of the first class "for the encouragement and protection of trade and commerce."

Application for charter. C. P. No. 2, Phila. Co., Sept. T., 1924, No. 9976.

*Harry Shapiro*, for petitioners.

LEWIS, J., March 30, 1925.—Petitioners applied for a charter as a corporation of the first class, to be styled "Ready-to-Wear Manufacturers' Association of Philadelphia." Although the application did not so state, the master reported that the charter was asked for under the provisions of paragraph 11 of section 2 of the General Corporation Act of April 29, 1874, P. L. 73, this paragraph empowering the granting of charters as corporations of the first class "for the encouragement and protection of trade and commerce." The purpose named in the application reads: "To further the interests of the needle industry in Philadelphia, and to promote fair dealing between the manufacturers and buyers and co-operation among manufacturers, and to improve conditions generally in that industry in connection with credits, adjustment of grievances between members or between members and buyers, the establishment of

Commonwealth ex rel. *v.* Swissvale Borough.

trade regulations, the establishment of improved factory and working conditions, economy in the conduct of the business of the members, reduction of credit risks, elimination of unfair and improper practices in the industry, and generally in all matters tending to the uplift or improvement of the industry in all its aspects."

It appeared that the applicants were all doing business either as manufacturers or dealers in ready-to-wear garments for women and children, and that the membership is to be confined to corporations, firms and persons engaged in the same general trade, although this limitation of membership was likewise omitted from the charter application and appears only in the by-laws.

The application was duly referred to a master, who reported that the purpose was lawful and that, in the judgment of the master, the object of the proposed corporation was not injurious to the community. Upon hearing, the court was not satisfied with the conclusions and recommendations of the master and referred the application back to the master to take additional testimony "on the question of the purposes of the corporation." From the supplemental report of the master, we find that additional testimony by the president of the proposed corporation was taken and that the master renews his recommendation that the charter be granted. Upon mature consideration, we are agreed that the recommendation of the master should not be approved, and that the application for a charter should be refused. The purpose or object of the corporation is not lawful. The methods proposed to be adopted to effectuate the purpose of the corporation are unlawful. The activities of the proposed corporation would be injurious to the community. The general scheme contemplated is the erection, as a corporation of the first class, of an agency to act for the member corporations, firms and individuals in performing certain of the functions of the respective businesses conducted by the members, and to, through this agency, accomplish a partial merger of the businesses of the members. The act authorizes the courts to grant charters as corporations of the first class for the encouragement and protection of trade and commerce, and petitioners do declare their intention to encourage and promote the trade in Philadelphia in ready-to-wear merchandise. The mere averment of this as a purpose does not justify the granting of a charter where other and the chief purposes disclosed are to promote the several businesses of the members and to increase the business profits of these members through the use of a joint agency in making purchases of merchandise, maintaining a joint show- and salesroom, conducting a joint credit and collection bureau or department, and pursuing other functions ordinarily exercised by the members in conducting their separate businesses.

We are aware of the decisions of our courts to the effect that, where the purpose of a proposed corporation is lawful and not injurious to the community, the fact that profit may incidentally result to the stockholders or members will not justify a refusal of incorporation, but nowhere has it been held that a charter should be approved for a corporation of the first class where the membership is to consist only of trading corporations, firms and individuals, and the chief object is to increase the trade and profits of these members, and the promotion and encouragement of the particular trade and commerce in general is but a cloak for these private gains and benefits. Corporations of the first class are ordinarily relieved from the obligation to make annual reports to the Auditor General and to other tax authorities of the Commonwealth and nation, being customarily exempt from many burdens of taxation, for the reason that they are deemed to be conducted not for private gain or profit, but for public purposes. There is a growing tendency on the

part of members of the bar to ignore the just distinction that exists and should be preserved between corporations of the first and second classes. It was not intended that incorporation by decree of court should make possible escape from ordinary taxation or the accomplishment of restraints of trade. The bare feature of co-operation between the members is not a test of the legality of an application such as this. If merger, in whole or in part, of the functions of trading corporations is desired, some other method must be adopted than to resort to courts for charters for corporations of the first class named in the Act of 1874. The mere sharing of the indirect and direct benefits and profits of joint action does not give to the participants the right to do business as a corporation of this class. There must be a public, as opposed to a private, object or purpose.

In the matter now before us, the application, by-laws and testimony disclose the following objectionable, and what we deem to be unlawful, purposes:

First. The maintenance of a central showroom of merchandise manufactured or offered for sale by the members of the proposed corporation. Although the benefit and profit from the conduct of this showroom and salesroom would not go directly to the corporation, but indirectly to the members, yet this is clearly an enterprise that is a doing of business for profit. If those engaged in the ready-to-wear garment trade can thus unite to employ part of their capital in the maintenance of a joint showroom through the agency of a corporation of the first class, it is possible that hundreds of thousands of dollars of capital of the different member corporations and firms could be thus utilized without proper taxation and yet for the direct profit of the members. If a joint showroom can be thus lawfully set up, why not a joint factory, a joint printing office, a joint advertising agency or a joint delivery system?

Second. The engaging in co-operative buying for the members of the corporation. While this purpose is not set forth expressly in the charter or by-laws, it is stated plainly by the president and others to be one of the objects sought to be effected. The charter refers to it in general language as "economy in the conduct of the business of the members." It will be noted that the economy to be accomplished is in the business of the members, which is the reverse of the statement of a purpose to increase the profits of the businesses of the members. Witnesses testifying in support of the application stated that it was proposed that the corporation should maintain offices and a department to solicit quotations on all merchandise required by the members and to negotiate contracts for the purchase of the requirements of the members, these contracts, however, to be signed directly by the members with the sellers. While the profit thus resulting would not pass through the treasury of the corporation, but would be realized by or distributed directly to the members, it is, nevertheless, the doing of business for profit. Here, again, capital actually employed in profitable enterprise would be made impossbile or difficult of taxation, because the agency utilized would be a corporation of the first class, not required to make periodical reports to the tax authorities.

Third. Maintaining of a joint credit bureau. The by-laws provide that this bureau shall handle all bankruptcy business of all the member corporations, firms and individuals, engage counsel, make application for the appointment of receivers, trustees, etc. Though not expressly indicated, the intention to maintain a black-list of debtors is somewhat apparent. This plan for the conducting of a joint collection agency may be desirable, but to accomplish such a purpose, the manufacturers of ready-made garments, or those engaged in any other business, are required to erect their agent as a corporation for profit and of the second class, authorized by the General Corporation Act.

It is not necessary to discuss possible objections to the proposed trade regulations by which the applicants seek to bring about the use among those in their trade of uniform contracts for the sale of merchandise, regulating the payment of delivery charges and the return of merchandise by customers; uniform contracts of employment of designers, foremen, salesmen and others. This purpose may not be illegal, but, when considered in connection with the other functions of the proposed corporation, have served to make more difficult any conclusion other than that a granting of this charter would be injurious to the community.

When we referred back to the master this application for the taking of additional testimony bearing upon the purpose of the intended corporation, opportunity was given the applicants to abandon the illegal purposes and to amend the application and by-laws to bring them within the law. This not having been done, the recommendation of the master is disapproved and the application for a charter is now refused.